**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHEN KENNEDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13-CV-2236 JAR |
| | ) | |
| GISH, SHERWOOD & FRIENDS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on cross motions for summary judgment. Plaintiff Stephen

Kennedy ("Kennedy") brings this action against Defendant Gish, Sherwood & Friends, Inc.

("Gish"), asserting copyright infringement and violations of the Digital Millennium Copyright

Act ("DMCA"), 17 U.S.C. § 1201, et seq. Kennedy, a professional photographer, claims Gish,

an advertising agency, copied and used 169 of his photographs without his permission in

violation of his copyrights. Gish moves for summary judgment on the issues of copyright

ownership (Doc. No. 128) and liability (Doc. No. 159), and partial summary judgment with

respect to certain damages limitations. (Doc. No. 161) Kennedy moves for partial summary

judgment on Gish's affirmative defenses of consent, permission, license or contract. (Doc. No.

162) The motions are fully briefed and ready for disposition.

### I.   Facts

The relevant facts are undisputed. Kennedy displays his photographs available for

licensing on his websites, kennedystock.com and Stephenkennedy.com. Each page of the

websites displays the following notice: © Stephen Kennedy | 314-███████. Each photograph

has a yellow tag watermark in the lower right hand corner identifying it as a Kennedy

photograph. Each photograph has digitally embedded metadata identifying Kennedy as the copyright owner.

In 2011, Gish copied 169 low-resolution images, through screenshots, from Kennedy's websites for possible use in an advertising campaign for its client First Acceptance Insurance Company ("FAIC"). Gish selected 39 of the 169 photographs for use as "comps," meaning they were incorporated into advertising mockups and presentations to convey Gish's proposed creative direction to FAIC. The remaining 130 photographs were not shown to FAIC at that time. The parties agree that advertising agencies routinely copy and use low-resolution photographs in comps without first notifying the copyright owner and without first securing an express license.

Upon termination of its relationship with Gish, FAIC requested Gish deliver copies of all files relating to the account, including "all working papers and drafts, digital files, copy, photos, and correspondence and reports related to the account." After receiving the files from Gish, FAIC displayed five of Kennedy's low-resolution photographs on its website in its final advertising campaign.

Kennedy's pleadings have gone through a number of revisions, but the operative pleading is his Fifth Amended Complaint against Gish and FAIC[1] filed on June 18, 2015, alleging claims of copyright infringement (Count I), contributory copyright infringement (Count II), vicarious copyright infringement (Count III) and DMCA violation (Count IV). (Fifth Amended Complaint ("FAC"), Doc. No. 119) On Gish's motion and with Kennedy's consent, Counts II and III of the FAC were dismissed on July 15, 2015. (Doc. No. 146) In its Answer to Kennedy's Fifth Amended Complaint, Gish asserted two counterclaims seeking to have Kennedy's copyright registrations invalidated or held unenforceable. Gish alleged Kennedy was not the true owner

---

[1] FAIC agreed to a settlement of Kennedy's claims and was dismissed from this action on June 18, 2015. (Doc. No. 120)

and author of the copyrights because they were taken in the course of his employment with one of his two companies, Stephen Kennedy, Inc. and Kennedystock, LLC. Gish further alleged Kennedy wrongly identified his photographs as unpublished in his copyright applications when "all or substantially all" of them had in fact been previously uploaded to Kennedy's websites. (Doc. No. 137 at 17-23) Kennedy has moved to dismiss Gish's counterclaims as untimely and because they fail to identify the challenged copyrights. (Doc. No. 140) Gish's counterclaims are proper and timely filed in response to Kennedy's amended complaint. The counterclaims properly identify the copyright registrations Gish seeks to invalidate by registration number. (See Doc. No. 137 at 18) Moreover, Kennedy has addressed the issue of copyright ownership in his responsive briefing to Gish's motion. Accordingly, Kennedy's motion to dismiss Gish's counterclaims will be denied.

## II.    Legal standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 618 (8th Cir. 1988). Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of

material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal–Mogul Ignition Co., 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007).

### III.    Discussion

The Copyright Act of 1976 provides that:

> the owner of a copyright ... has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies …; (3) to distribute copies ... of the copyrighted work to the public ... and (5) in the case of ... pictorial ... works ... to display the copyrighted work publicly.

17 U.S.C. § 106 (2002). Engaging in any of these categories without the copyright owner's permission violates the exclusive rights of the copyright owner and constitutes infringement of the copyright. See 17 U.S.C. § 501(a) (2002). To establish copyright infringement, a plaintiff must demonstrate that he owns a valid copyright and that the defendant has copied, displayed, or distributed protected elements of the copyrighted work without authorization. Mulcahy v. Cheetah Learning LLC, 386 F.3d 849, 852 (8th Cir. 2004) (citing Feist Publ'n, Inc. v. Rural Tel. Serv. Co., 111 S. Ct. 1282, 1296 (1991)). See also Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 962-63 (8th Cir. 2005); Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 941 (8th Cir. 1992). However, even if the plaintiff makes this prima facie showing, the defendant may avoid liability by establishing its use of the copyrighted work was authorized by express or implied license and/or fair use. Am. Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A., 2013 WL 4666330, at *8 (D. Minn. Aug. 30, 2013).

### A.    Gish's Motion for Summary Judgment Regarding Plaintiff's Lack of Copyright Ownership

As a threshold matter, Gish moves to strike Kennedy's responses to certain of its Statement of Uncontroverted Material Facts or, alternatively, deem such statements admitted for

purposes of the instant motion. (Doc. No. 172)[2] Motions to strike are not favored and infrequently granted, because they propose a drastic remedy. <u>Stanbury Law Firm, P.A. v. IRS</u>, 221 F.3d 1059, 1063 (8th Cir. 2000). Rule 12(f) authorizes a court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A "pleading" as defined in Rule 7(a) does not include statements of fact submitted in support of, or in opposition to, a motion for summary judgment. Thus, there is no specific authority in the Federal Rules for striking a party's statement of uncontroverted facts or responses thereto. <u>Nelson v. Special Admin. Bd. of St. Louis Pub. Sch.</u>, 2012 WL 5508394, at *1 (E.D. Mo. Nov. 14, 2012). Accordingly, Gish's motion to strike will be denied. The Court will examine the entire record, including any properly supported factual contentions, to determine whether there are genuine disputes regarding material facts precluding the entry of summary judgment. <u>See</u> <u>Fabian v. St. Louis Rams Partnership</u>, 2014 WL 222816, at *1 (E.D. Mo. Jan. 21, 2014). Mere arguments, speculation and/or conclusions fail to create a genuine issue of material fact sufficient to defeat summary judgment.

The plaintiff in a copyright infringement action has the burden of proving ownership of a valid copyright. <u>Taylor</u>, 403 F.3d at 962. A certificate of copyright registration is prima facie evidence of the validity of the copyright and the facts stated in the certificate, including ownership. <u>See</u> 17 U.S.C. § 410(c); <u>Reg'l Multiple Listing Serv. of Minn., Inc. v. Am. Home Realty Network, Inc.</u>, 2012 WL 4470286, at *8 (D. Minn. Sept. 27, 2012); <u>Taylor</u>, 403 F.3d at 972. The copyright registrations for the photographs at issue list Kennedy as the copyright owner. (<u>See</u> Doc. No. 119-2) Kennedy is, therefore, entitled to a presumption of the validity of the facts stated therein. <u>Taylor Corp. v. Four Seasons Greetings, LLC</u>, 315 F.3d 1039, 1042 (8th

---

[2] Specifically, Gish requests the Court strike Kennedy's responses to ¶¶ 9-14, 17-33, 35-36, and 38-42 on the grounds that they do not specifically controvert the facts set forth therein, are improperly argumentative, and/or are unsupported by the record.

Cir. 2003). This presumption is not irrebuttable, but it shifts the burden to the defendant to offer some evidence to dispute the plaintiff's prima facie case of infringement. Lenert v. Duck Head Apparel Co., Inc., 1996 WL 595691, at *3 (5th Cir. Sept. 25, 1996); Norma Ribbon & Trimming, Inc. v. Little, 51 F.3d 45, 47 (5th Cir. 1995) (citing Lakedreams v. Taylor, 932 F.2d 1103, 1108 n. 10 (5th Cir. 1991)); Entm't Research v. Genesis Creative Grp, 122 F.3d 1211, 1217 (9th Cir. 1997). "The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the copyright." Masquerade Novelty, Inc. v. Unique Indus., 912 F.2d 663, 668 (3rd Cir. 1990).

Here, Gish contends Kennedy does not own the copyrights to his photographs because he took them as an employee of his two companies, Stephen Kennedy, Inc. and KennedyStock, LLC. Thus, the photographs are "works for hire," i.e., "a work prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101. In the case of a work for hire, the employer is considered the author and automatic copyright owner of the work, unless "the parties have expressly agreed otherwise in a written instrument signed by them." 17 U.S.C. §§ 201 (a), (b). If Kennedy does not own the copyrights, he does not have standing to sue for infringement.

In support of its motion, Gish relies on Kennedy's deposition testimony, both as an individual and as a Rule 30(b)(6) representative of Stephen Kennedy, Inc. and KennedyStock, LLC, as well as the corporate entities' tax returns, confirming the companies paid Kennedy a salary, provided him with medical benefits and health insurance, reimbursed his expenses, and supplied his equipment, including a car. Kennedy responds that as the sole owner of Stephen Kennedy, Inc. and KennedyStock, LLC, he has structured his relationship with his companies so that he is an employee for "administrative work" such as bookkeeping, client development, marketing and sales, and an independent contractor for photography services.

- 6 -

The Copyright Act does not define the terms "employee" or "scope of employment." In Cmty for Creative Non–Violence v. Reid, 490 U.S. 730, 740-41, 751 (1989), the Supreme Court held the term "employee" should be understood in light of common law agency principles and that a multi-factor balancing test[3] was required to determine if a work was produced for hire (by an employee) or by an independent contractor. Id. at 751. Some of these factors will have little or no significance in determining whether a party is an independent contractor or an employee, while others will almost always be significant, such as: (1) the hiring party's right to control the manner and means of creation; (2) the skill required [of the hired person]; (3) the provision of employee benefits; (4) the tax treatment of the hired party; and (5) whether the hiring party has the right to assign additional projects to the hired party. Aymes v. Bonelli, 980 F.2d 857, 861 (2d Cir. 1992). Questions of historical fact relevant to applying each factor are for the finder of fact, see Carter v. Helmsley–Spear, Inc., 71 F.3d 77, 85 (2d Cir.1995), but "the ultimate determination, on settled facts, of whether a work qualifies as a work-for-hire is a question of law." Aymes, 980 F.2d at 861; Langman Fabrics v. Graff Californiawear, Inc., 160 F.3d 106, 111 (2d Cir. 1998).

In terms of the significant Reid factors, Kennedy's deposition testimony and declaration make it clear that neither Stephen Kennedy, Inc. nor KennedyStock, LLC make any attempt to control the manner and means by which the photographs were taken. Kennedy has complete autonomy to determine which assignments to take, and works on various locations on days and

---

[3] The Reid Court set out thirteen specific factors: the hiring party's right to control the manner and means by which the product is accomplished.... the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. 490 U.S. at 751-52.

times of his choosing. He selects the models he works with and all model releases are given to Kennedy, not the companies. In Kennedy's own words, "I control my companies. My companies do not control me." (Kennedy Declaration, Doc. No. 155-1 at ¶ 5) In addition, the work done by Kennedy requires considerable skill, which provides strong support for a finding that he was an independent contractor. See, e.g., Aymes, 980 F.2d at 862; Marco v. Accent Publ'g Co. Inc., 969 F.2d 1547, 1552-52 (3d Cir. 1992); Carter v. Helmsley-Spear, Inc., 861 F. Supp. 303 (S.D.N.Y. 1994), revd in part on other grounds, 71 F.3d 77 (2d Cir. 1995). Thus, these factors tend to suggest independent contractor status.

On the other hand, the provision of employee benefits to and payment of payroll taxes for Kennedy by the corporate entities suggest employee status. C.f., Blair v. World Tropics Prods, Inc., 502 F. Supp. 2d 828, 834 (W.D. Ark. 2007) (quoting Kirk v. Harter, 188 F.3d 1005, 1008 (8th Cir. 1999) ("[E]very case since Reid that has applied the test has found the hired party to be an independent contractor where the hiring party failed to extend benefits or pay social security taxes."); Birchem v. Knights of Columbus, 116 F.3d 310, 313 (8th Cir. 1997) (insurance agent was independent contractor, not employee, of fraternal benefit society where society did not withhold income taxes).

Kennedy testified he receives a salary from both Stephen Kennedy, Inc. and KennedyStock, LLC, and is issued W-2 forms. (See Kennedy 30(b)(6) Depo., Doc. No. 129-4 at 11:18-21, 12:7-10) Neither entity issued 1099 forms to Kennedy, which would reflect independent contractor status. Stephen Kennedy, Inc. provides him with medical benefits and health insurance as well as retirement benefits in the form of "a pension profit-sharing plan." (Kennedy Depo., Doc. No. 129-3 at 259:16-24; 260:1-4) Taxes, Social Security and Medicare payments are withheld from his paychecks. (Id. at 260:14-18; Kennedy 30(b)(6) Depo. at 19:10-

20:8) Further, it was Kennedy's testimony that "all tax returns in this case, whether it was the LLC or the Inc., treated [him] as an employee." (Kennedy 30(b)(6) Depo. at 33:11-14) Kennedy contends the salary and benefits he receives are for his administrative work, not his photography, and that his ownership draw from KennedyStock, LLC is not taxed as employee compensation.

Under the facts and circumstances of this case, the Court finds a genuine issue of material fact as to whether Kennedy was an independent contractor or employee under the Reid test. Accordingly, the Court will deny Gish's motion as to the issue of Kennedy's copyright ownership.

**B. Gish's Motion for Summary Judgment on Liability**

**C. Kennedy's Motion for Partial Summary Judgment on the Defenses of Consent, Permission, License or Contract**

**1. Copyright Infringement**

There is no dispute that Gish copied Kennedy's photographs; however, not all copying is legally actionable. Gish argues it is entitled to summary judgment on Kennedy's copyright infringement claim because it had both express and implied consent to use Kennedy's low-resolution photographs for comp use and because its copying was protected by fair use. In response to Gish's motion (and as the basis for his own motion for partial summary judgment), Kennedy maintains he did not consent, license or give permission to Gish for the copying and uses Gish made of his photographs.

**a. License**

"A license is a defense to a claim of copyright infringement." Teter v. Glass Onion, Inc., 723 F. Supp. 2d 1138, 1147 (W.D. Mo. 2010) (quoting Oddo v. Ries, 743 F.2d 630, 634, n. 6 (9th Cir. 1984)). While a copyright owner may expressly grant a license to use the copyrighted work, a nonexclusive implied license can be granted verbally or implied from conduct. Id.

"[C]onsent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing." I.A.E., Inc. v. Shaver, 74 F.3d 768, 775 (7th Cir. 1996).

**(i)    Express license**

Gish argues Kennedy granted it an express license to use low-resolution copies of his photographs for comp use in a July 19, 2011 email Kennedy sent to Gish explaining his comp use policy. Licensing agreements are contractual in nature, and principles of contract law govern their construction. Republic Eng'g & Mfg. Co. v. Moskovitz, 376 S.W.2d 649, 654 (Mo. Ct. App. 1964). In order to form a valid contract in Missouri, there must be an "offer, acceptance, and bargained for consideration." Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 662 (Mo. banc 1988). There must also be a meeting of the minds between the parties as to the essential terms of the contract. Superior Edge, Inc. v. Monsanto Co., 964 F. Supp. 2d 1017, 1035 (D. Minn. 2013) (internal citations omitted).

Here Kennedy does not dispute that he offered a free license for comp use to firms who had licensed photos from him before, but argues that requesting and obtaining the comp images directly from him was a term of the license. The Court agrees. A fair reading of the email as a whole is that the final paragraph regarding file requests refers to both low and high resolution files:

> Thank you for your interest in KennedyStock. Back in 2009 Jennifer Rundberg licensed some images for NFIB. It was a pleasure working with your company.
>
> Regarding your question, I offer free low-resolution files (800 pixels at 72 ppi) for comp use to companies that have previously licensed my images. These files are watermarked in the lower right hand corner with my yellow tag logo.
>
> If you have need for an un-watermarked high-resolution file I offer those at $300.00 each for a 30 day presentation license. If you anticipate needing more than a few images for

comp/presentation use I can offer a bulk discount based on quantity. Licenses are payable by credit card.

File requests can be fulfilled quickly but I'm traveling tomorrow and unavailable after 12:00 noon DCT. That is my only scheduled off-line time until August. Please let me know if I can be of further assistance.

(Doc. No. 166-14) Gish admittedly never requested any low-resolution files from Kennedy, a necessary predicate for contract formation. This is significant because had Gish requested and received low-resolution files directly from Kennedy, the altering of the metadata on the photographs during the screenshot process would not have occurred. Thus, Gish never accepted Kennedy's offer of a free license for comp use. See Shell v. Am. Family Rights Ass'n, 899 F. Supp. 2d 1035, 1059 (D. Colo. 2012) (copyright notice/security agreement on Internet website was insufficient to establish existence of contract between website operator and organization's principal without any allegation showing that principal accepted terms of that notice/agreement). Without an offer and acceptance of an exchange of promises constituting consideration, no express license to use low-resolution copies of Kennedy's photographs for comp use resulted. Accordingly, the Court will deny Gish's motion on its so-called contract-related defense of express license, and grant Kennedy's cross-motion that the defense in inapplicable.

**(ii)     Implied license**

Gish further argues its copying of Kennedy's images for comp use was protected by implied license. Generally, a court can find an implied license "where the copyright holder engages in conduct from which [the] other [party] may properly infer that the owner consents to his use." Parker v. Yahoo!, Inc., 2008 WL 4410095, at *3 (E.D. Pa. Sept. 25, 2008) (quoting Field v. Google, Inc., 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) (quoting De Forest Radio Tel. & Tel. Co. v. United States, 273 U.S. 236, 241 (1927) (internal quotations omitted)) (alterations in original). Silence or lack of objection may also be the equivalent of a nonexclusive license,

- 11 -

especially where the plaintiff knows of the defendant's use and encourages it. <u>See</u> <u>e.g.</u>, <u>Field</u>, 412 F. Supp. 2d at 1116; <u>Keane Dealer Servs., Inc. v. Harts</u>, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) (software developer's knowledge that user was using software, coupled with developer's silence, constituted implied license for user to use software).

Here, Kennedy dealt with Gish on two separate projects in 2007. The email exchanges between the parties on August 20, 2007 and November 14, 2007 make it clear that Gish had already copied and used low-resolution images of certain photographs without Kennedy's prior consent or payment. (Defendant's Statement of Uncontroverted Material Facts in Support of Defendant's Motion for Summary Judgment on Liability ("DSOF"), Doc. No. 166-1 at ¶¶ 6-12) Kennedy never instructed Gish to stop making copies of his low-resolution images, or  objected to Gish's copying and use (<u>Id</u>. at ¶¶ 23, 26), consistent with the common practice in the advertising industry regarding comp use, thereby suggesting he consented to such use. Thereafter, from 2007 through July 2011, Kennedy continued to contact Gish to solicit work on future projects. (<u>Id</u>. at ¶ 30) He quoted prices, accepted payment from Gish for publication use of high-resolution images, and never asked for prior authorization or compensation for comp use of his low-resolution images. None of Kennedy's communications during this time included any warnings, terms and conditions, or other prohibitions against comp use of his low-resolution images. (<u>Id</u>. at ¶ 31) Kennedy's July 19, 2011 email is further evidence of his consent to comp use through past dealings and consistent with Gish's argument of implied license.

Common industry practice is also indicative of consent. In <u>Field v. Google, Inc.</u>, for instance, Field was aware that the presence of a "no archive" meta-tag on the pages of his web site would have informed Google not to display "cached" links to his pages. Despite his knowledge of this industry standard mechanism, Field chose not to include the "no archive"

meta-tag on the pages of his site. The court interpreted this conduct as the grant of a license to Google for that use. 412 F. Supp. 2d at 1116. Here, Kennedy was aware of comp use in the advertising industry and that agencies routinely copy and use low-resolution images without first notifying the copyright owner and securing a license. He also acknowledged that the ultimate goal of comp use is for the advertising agency to obtain approval to license or purchase the high-resolution images from the photographer for use in the final advertising campaign. (See Plaintiff's Response to DSOF, Doc. No. 184 at ¶ 59)

In sum, based on Kennedy's past conduct with Gish, through his encouragement and lack of objection, as well as the accepted practice of comp use in the advertising industry, the Court concludes Gish had an implied license from Kennedy to copy his low-resolution images for comp use. Accordingly, the Court will grant Gish's motion on its so-called consent-related defenses, and deny Kennedy's cross-motion that the defenses are inapplicable.

### b. Fair use

Gish further argues its comp use of Kennedy's photographs was a fair use. (Doc. No. 166 at 15-25) The fair use doctrine "confers a privilege to use copyrighted material in a reasonable manner without the owner's consent." Belmore v. City Pages, Inc., 880 F. Supp. 673, 676 (D. Minn. 1995). The statute, 17 U.S.C. § 107, specifically permits the unauthorized use of copyrighted work "for purposes such as criticism, comment, news reporting, teaching …, scholarship, or research." Four non-exclusive factors "shall" be considered in determining whether an otherwise infringing use is a non-infringing fair use: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the

potential market for or value of the copyrighted work. 17 U.S.C. § 107. None of these factors are considered determinative; in applying these factors, courts must tailor the analysis to the individual facts presented in each case. Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 582 (1994); Belmore, 880 F. Supp. at 680. If, after applying the four factors, there are no material factual disputes, fair use may be resolved on summary judgment. Belmore, 880 F. Supp. at 677. The material facts in this case are not in dispute.

The focus of the first statutory factor is whether and to what extent the new work is "transformative." Campbell, 510 U.S. at 579. For a work to be transformative, it must do something new with the copyrighted work, such as creating "new expression, meaning or message." Cariou v. Prince, 714 F.3d 694, 705 (2d Cir. 2013) (quoting Campbell, 510 U.S. at 579); see also, Am. Inst., 2013 WL 4666330, at *8 (quoting Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc., 150 F.3d 132, 142 (2d Cir. 1998)). "A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." Wall Data Inc. v. Los Angeles Cnty Sheriff's Dept., 447 F.3d 769, 778 (9th Cir. 2006). Conversely, if the new work "supersede[s] the use of the original," the use is likely not a fair use. Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 550–51 (1985) (internal quotation omitted) (publishing the "heart" of an unpublished work and thus supplanting the copyright holder's first publication right was not a fair use). The more transformative the new work, the less important the other factors, including commercialism, become. Antioch Co. v. Scrapbook Borders, Inc., 201 F. Supp. 2d 980, 988 (D. Minn. 2003).

Gish asserts its comp use of Kennedy's photographs transformed them from stand-alone photographs into integral parts of proposed advertisements, which constituted a new and

different work. The photographs were re-sized, cropped, placed into graphic designs and supplemented with text and the FAIC name and logo. While Gish argues these actions were taken for creative reasons, they had the effect of removing Kennedy's identifying information from his photographs.

Kennedy argues there was nothing transformative about Gish's work because the photographs were essentially unchanged. (Doc. No. 187 at 32) However, even making an exact copy of a work may be transformative so long as the copy serves a different function than the original work. In Kelly v. Arriba Soft Corp., 336 F.3d 811, 818–19 (9th Cir. 2003), for example, the court found the display of small low-resolution pictures, called thumbnails, on the website of an Internet search engine constituted a fair use of the plaintiff's photographs. "This case involves more than merely a retransmission of Kelly's images in a different medium. Arriba's use of the images serves a different function than Kelly's use – improving access to information on the internet versus artistic expression." Id. Because Arriba's use was not superseding Kelly's use, but, rather, creating a different purpose of the images, the court found Arriba's use was transformative. The court also concluded that Arriba's use of the images did not harm the photographer's market for his images. Id. at 821-22. See also Perfect 10 Inc. v. Amazon.com Inc., 487 F.3d 701 (9th Cir. 2007) *amended and superseded on reh'g*, 508 F.3d 1146 (9th Cir. 2007) (operator's display of thumbnail images of copyright owner's photographs was fair use).

Similarly, the First Circuit held that copying a photograph intended for use in a modeling portfolio and using it instead in a news articles was a transformative use. By putting a copy of the photograph in the newspaper, the work was transformed into news, creating a new meaning or purpose for the work. See Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 22–23 (1st Cir. 2000). And in Cariou, 714 F.3d 694, the Second Circuit concluded that printing photographs and

transforming them, such as by increasing them in size, blurring or sharpening them, adding content, and compositing multiple photographs with other works, was transformative because it gave the photographs "a new expression," and "employ[ed] new aesthetics with creative and communicative results distinct from [plaintiff's]." Id. at 707-08.

Gish's use of Kennedy's images in its advertising mockups and presentations is analogous to these cases because Gish uses Kennedy's images in a new context to serve a different purpose and is not simply superseding Kennedy's purpose. This factor, therefore, weighs in favor of fair use.

The first factor also requires the Court to consider whether the allegedly infringing work has a commercial or non-profit educational purpose. Cariou, 714 F.3d at 708. The Supreme Court has recognized that "nearly all of the illustrative uses listed in the preamble paragraph of § 107 … are generally conducted for profit," Campbell, 510 U.S. at 584, and cautions courts in their application of this factor because Congress "could not have intended" a rule that commercial uses are presumptively unfair. Id. There is no dispute that comp use generates revenue for advertising agencies. Nevertheless, due to the transformative nature of the comps, the Court finds this factor is not determinative.

The second statutory factor, "the nature of the copyrighted work," recognizes that some works are closer to the core of intended copyright protection than others. Campbell, 510 U.S. at 586. Although Kennedy's photographs consist primarily of "real-life people, people that are not fashion models," in ordinary settings, the parties do not appear to dispute that his work is creative and as such entitled to greater protection than that afforded to purely informational works. Id. Thus, this factor weighs against fair use. Again, this factor "may be of limited usefulness where the creative work is being used for a transformative purpose." Cariou, 714 F.3d

at 710 (quoting <u>Bill Graham Archives v. Dorling Kindersley Ltd.</u>, 448 F.3d 605, 612 (2d Cir. 2006)).

With regard to the third factor, the Court considers whether the "amount and substantiality of the portion used in relation to the copyright work as a whole," 17 U.S.C. § 107(3), is "reasonable in relation to the purpose of copying." <u>Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.</u>, 109 F.3d 1394, 1402 (9th Cir. 1997). The parties disagree as to what the Court should consider as the copyrighted work, i.e., the entire KennedyStock website comprised of over 9,000 photographs, or 169 separate photographs. The fact of the matter is that each one of Kennedy's images is a single, copyrightable effort and licensed individually. Thus, for purposes of its analysis, the Court considers the photographs as separate works. It is undisputed that Gish copied each photograph at issue in its entirety for comp use; however, as discussed above, even making an exact copy of a work is justifiable where the purpose of the work differs from the original. <u>See Kelly</u>, 336 F.3d 811. Here significant use is made of the copyrighted image (in low-resolution) to provide advertisers with the look and feel of a mocked-up ad. The Court, therefore, concludes that this factor weighs in favor of fair use.

The fourth factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Gish argues that comps are not economic substitutes for the high-resolution photographs Kennedy is in the business of licensing and that comp use actually promotes the licensing of photographers' works. In response, Kennedy asserts he would have insisted on compensation for Gish's extensive copying and use of his photographs for commercial purposes. While the impact on licensing revenue is a proper subject for consideration in assessing the fourth factor, courts have held it is not the sort of negative effect on the market that weighs heavily against a finding of fair use. <u>Bill Graham</u>, 448 F.3d at 614

(and cases cited therein). If it were, then the market factor would always weigh in favor of the copyright holder and render the analysis of this factor meaningless. Id; Am. Inst., 2013 WL 4666330, at *14. As previously discussed, Gish's comp use of the images is transformative and so market harm cannot be readily inferred. Campbell, 510 U.S. at 591. Moreover, Kennedy has acknowledged he offers a free license for comp use to agencies that have licensed photographs from him previously, which cuts against his argument about lost revenues. Therefore, the Court concludes the fourth factor also weighs in favor of fair use.

In considering these factors together "in light of the purposes of copyright," id. at 578, the Court finds and concludes that Gish's copying of 169 of Kennedy's low-resolution images through screenshots, and subsequent alteration of those images for use in a series of story boards, two Power Point presentations, a ten-minute video[4], five Point-of-Purchase posters, and a counter card design for internal presentation to FAIC, was a fair use. Accordingly, the Court will grant Gish's motion on its fair use defense and deny Kennedy's cross-motion that the defense is inapplicable.

This does not, however, resolve all issues of copyright infringement and thus does not result in summary judgment in Gish's favor on Kennedy's copyright infringement claim. Construed broadly, Kennedy's infringement claim also encompasses Gish's copying and transfer of those photographs in their altered state to FAIC, which ultimately led to the publication of five of them on FAIC's website. In his Fifth Amended Complaint, which is the operative complaint, Kennedy alleges:

> 31. Gish copied, from its computer system, all of the approximate 169 Kennedy photos and *gave all of the copies to First Acceptance*.

---

[4] Kennedy disputes the video was a comp use; however, the record is clear the video was made for presentation to FAIC's board of directors and not for publication. (Kerry Oliver Depo., Doc. No. 166-15 at 97:3-7; Charles Claggett Jr. Depo., Doc. No. 204-4 at 8:7-15) The Court will consider this a comp use, consistent with the parties' understanding of the practice within the advertising industry.

32. First Acceptance then selected 5 of the Kennedy photos *supplied by Gish* which First Acceptance then used on its websites.

37. Gish took, stole, downloaded, deliberately stripped out or cropped Kennedy's copyright protection watermark from all but 7 of the approximately 169 photos, and for all of the approximately 169 photos Gish deliberately removed and in some cases replaced the Kennedy's copyright protection metadata, changed the metadata so instead of showing Stephen Kennedy's copyright information the metadata falsely stated that the copyright status was "unknown" or "public domain", and for 23 photos Gish changed the metadata so the author was falsely listed as Gish employee "Kerry Oliver," and recopied and *gave Kennedy's photos to First Acceptance* and, on information and belief, to other currently unknown third parties.

(Emphasis added.)

Gish asserts it transferred copies of all of its files relating to the FAIC project to FAIC following FAIC's termination of its contractual relationship with Gish and upon its request. Gish argues that in light of their principal-agent relationship, the transfer to FAIC created no independent infringement; FAIC as principal always had constructive possession of the files. (Doc. No. 187 at 12) The Court finds this argument unavailing under the facts and circumstances of this case because in fact, no principal-agent relationship existed at the time of the transfer. FAIC had already terminated its relationship with Gish.

Gish has cited this Court to Authors Guild v. Google, Inc., No. 13-4829-CV, 2015 WL 6079426 (2d Cir. Oct. 16, 2015), where the Second Circuit rejected the author-plaintiffs' argument that Google's distribution to a participating library of a digital copy of their books was not a fair use and exposed them to risks of loss if the library used its digital copy in an infringing manner. In that case, the court recognized the possibility that distribution of copied works to a third party could result in a risk of loss, but found it to be "sheer speculation" based on the record before it. Id. at *19. Here, unlike in Google, there is no "mere speculative possibility" of loss.

- 19 -

Gish's distribution of Kennedy's copyrighted works to FAIC actually exposed Kennedy to loss, at least with respect to the five photographs published on FAIC's website.

The principle purpose of the Copyright Act is "to encourage the origination of creative works," Matthew Bender & Co., Inc. v. W. Pub. Co., 240 F.3d 116, 122 (2d Cir. 2001), "by giving potential creators exclusive control over copying of their works." Authors Guild, 2015 WL 6079426, at *5. In light of the Act's purpose, the Court finds there is a question of fact for the jury as to whether Gish's copying and transfer of 169 of Kennedy's photographs to FAIC in an altered state, with his copyright management information removed, constitutes copyright infringement. Accordingly, the Court will deny Gish's motion for summary judgment on Kennedy's copyright infringement claim as to all 169 photographs.

## 2. DMCA

The Digital Millennium Copyright Act of 1998 ("DMCA"), 17 U.S.C. § 1201, et seq., protects copyright holders against the circumvention of digital rights management on copyrighted works. The relevant section of the DMCA, § 1202(b)[5], provides as follows:

(b) **Removal or alteration of copyright management information**.—No person shall, without the authority of the copyright owner or the law-

(1) intentionally remove or alter any copyright management information,

(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

---

[5] As noted by Gish, Kennedy's Fifth Amended Complaint alleges a violation of 17 U.S.C. § 1201, not § 1202; however, this appears to be typographical error and both parties have treated the complaint as alleging a violation of § 1202.

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

In his Fifth Amended Complaint, which is the operative complaint, Kennedy alleges Gish willfully violated the DMCA by removing watermarks on his photographs, copying the photographs without the copyright notice below each photograph and on each webpage, and by removing and changing the metadata from the photographs. (FAC at ¶ 64) Now in his briefing in opposition to Gish's motion, Kennedy claims for the first time that Gish also violated the DMCA by distributing his photographs to FAIC after removing and altering his copyright management information. (See Doc. No. 187 at 34, 36) This does not, however, change his pleading. A plaintiff cannot amend his complaint through arguments in his brief in opposition to a motion for summary judgment. Scott v. Wells Fargo Bank, N.A., 2011 WL 3837077, at *10 (D. Minn. Aug. 29, 2011) (and cases cited therein).

Although the Court has broadly construed the language in the operative complaint as it relates to Kennedy's copyright infringement claim, his DMCA claim is clearly limited and only alleges removal of copyright management information as the violation. Indeed, neither Kennedy's original complaint nor his five subsequent amended complaints allege a violation of the DMCA through a distribution of copied works. (Doc. Nos. 1, 28, 58, 85, 89, 119) The Court will not consider this unpled allegation.

The Court has determined that Gish's copying and use of Kennedy's low-resolution photographs for comp use, which included cropping, photo shopping and otherwise altering the photographs, was a fair use. The DMCA expressly states its operation is not intended to affect fair use rights. See 17 U.S.C. § 1201(c)(1) ("Nothing in this section shall affect rights, remedies, limitations, or defenses to copyright infringement, including fair use, under this title."). Thus,

Gish's comp use of Kennedy's images cannot be a violation of § 1202(b)(1). The Court is, therefore, required to grant summary judgment in favor of Gish on Kennedy's DMCA claim.

### D.  Gish's Motion for Partial Summary Judgment on Damages[6]

A copyright owner may elect to seek "an award of statutory damages for all infringements involved in the action, with respect to any *one work*, for which any one infringer is liable individually … " 17 U.S.C. § 504(c) (1) (emphasis added). Kennedy seeks statutory damages for each photograph infringed upon by Gish. In support of its motion, Gish argues Kennedy is limited to one award of statutory damages because his photographs were copied from his website, which is a "compilation" or "collective work" under the Copyright Act.[7] Gish contends a website is treated the same way under copyright law as traditional compilations and collective works such as published anthologies, catalogs, and albums but cites no support for this contention.

Kennedy responds that he did not register his photographs as compilations when registering the copyrights. (See Doc. No. 119-2) The prima facie evidence of this choice is found on the copyright registration certificates. Grady v. Nelson, 2014 WL 7143852, at *8 (D. Colo. Dec. 15, 2014). In reply, Gish argues that while a single registration for a group of related works is permissible under certain conditions, see 37 C.F.R. § 202.3, in this case Kennedy's registrations do not fall under any of those categories, and in particular, "published

---

[6] The parties agree Gish is entitled to a set off in the amount of FAIC's settlement from any judgment against Gish in Kennedy's favor.

[7] A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C § 101. The term "compilation" also includes "collective works," defined as "work[s] ... in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." Id.

photographs."[8] 37 C.F.R. § 202.3(b)(10). Instead, a combination of unpublished works, such as Kennedy's photographs, is registered as a "single work," i.e., a "collection." The Court need not address this argument because, as pointed out by Gish, registration is not relevant under the statutory scheme.

Courts addressing the issue of what constitutes a compilation subject to the one-award restriction of § 504(c)(1) focus on whether the copyright holder issued its works separately, or together as a unit. Bryant v. Media Right Prods., Inc., 603 F.3d 135, 141 (2d Cir. 2010) (citing Twin Peaks Prods., Inc. v. Publ'ns. Int'l Ltd., 996 F.2d 1366, 1381 (2d Cir. 1993); WB Music Corp. v. RTV Commc'n Grp., Inc., 445 F.3d 538, 541 (2d Cir. 2006)). Each one of Kennedy's images is a single, copyrightable effort. Kennedy licenses his photographs individually; he does not license his website or the photographs on his website as a whole. Moreover, it appears that all of the photographs at issue were infringed on an individual basis. The fact that they appeared together on a website should not detract from the protection afforded to each individual effort. Grady v. Nelson, 2014 WL 7143852, at *8 (D. Colo. Dec. 15, 2014). Thus, Kennedy may be entitled to recover a statutory damage award for each photograph found to have been infringed by Gish.

The Copyright Act authorizes a jury to award enhanced statutory damages if it finds the defendant's infringement was willful. In the context of 17 U.S.C. § 504(c)(2), acting "willfully" means acting with knowledge that one's conduct constitutes copyright infringement. RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co., 845 F.2d 773, 779 (8th Cir. 1988). Gish argues it never knew or had reasonable grounds to know that FAIC would use any of the transferred photographs in an infringing manner. Gish states that among the files transferred, it provided

---

[8] This argument appears to be inconsistent with Gish's counterclaim wherein Gish alleges that "all or substantially all" of Kennedy's photographs had been previously published on his websites.

copies of all licenses it purchased for high-resolution photographs and directed FAIC's attention to those licenses. (See Doc. No. 166-25) Willfulness is generally a question of fact and involves elements of intent, reasonableness, and belief. See, e.g., Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc., 913 F. Supp. 1256, 1271 (N.D. Iowa 1996). Based on the facts and circumstances of this case, the Court finds that questions of fact remain as to Kennedy's damages and whether Gish acted willfully. Accordingly, Gish's motion for partial summary judgment as to damages will be denied.

**Conclusion**

For these reasons, the Court will deny Gish's motion for summary judgment on the issue of Kennedy's copyright ownership, finding a genuine issue of material fact as to whether Kennedy was an independent contractor or employee under the Reid test.

With respect to Gish's motion for summary judgment on liability, the Court will grant Gish's motion as to Kennedy's DMCA claim and deny the motion as to Kennedy's copyright infringement claim, finding a genuine issue of material fact as to whether Gish's copying and transfer of Kennedy's photographs to FAIC in an altered state, including the removal of his copyright management information, constituted copyright infringement.

The Court will grant Kennedy's motion for partial summary judgment as to Gish's defense of express consent and deny his motion as to Gish's defenses of implied license and fair use.

Finally, the Court will deny Gish's motion for partial summary judgment on damages, finding Kennedy may be entitled to recover a statutory damage award for each photograph found to have been infringed by Gish, and that a genuine issue of material fact exists as to whether Gish acted wilfully.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment Regarding Plaintiff's Lack of Copyright Ownership [128] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss New Counterclaims Filed by Defendant [140] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Certain of Plaintiff's Responses to Defendant's Statement of Material Facts or Deem Movant's Facts Admitted [172] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment on Liability [159] is **GRANTED** as to Count 4 (Digital Millennium Copyright Act Violation) and **DENIED** as to Count 1 (Copyright Infringement) of the Fifth Amended Complaint.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment on Damages [161] is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion for Partial Summary Judgment on the Defenses of Consent, Permission, License or Contract [162] is **GRANTED** as to Defendant's defense of express consent. In all other respects, the motion is **DENIED**.


**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**


Dated this 5th day of November, 2015.